**Matter of Fred JAMES, Bertha James, Debtors.**

**Bankruptcy No. 91–82136.**

United States Bankruptcy Court,
N.D. Alabama,
Northern Division.

July 6, 1995.

Joseph W. Propst, II, Decatur, AL, for debtors.

Melissa Larsen, Sirote & Permutt, P.C., Huntsville, AL, for creditor Randall Forrester.

## ORDER

JACK CADDELL, Bankruptcy Judge.

This matter is before the Court on a motion filed by the debtors for reconsideration of the Order dated April 28, 1995, which denied their motion to reopen their bankruptcy proceeding in order to amend schedules to add an omitted pre-petition creditor. Oral arguments were presented to the Court on June 14, 1995, by Joseph Propst, II, for the debtors and Melissa Larsen for the creditor, Randall Forrester. Based upon the findings of facts and conclusions of law set forth, the motion is DENIED.

## STATEMENT OF FACTS

The debtor, Fred James, is the mayor of North Courtland, Alabama. A complaint was filed in the United States District Court for the Northern District of Alabama by Randall Forrester in which the debtor and the City of North Courtland were the party-defendants. The debtor was sued individually and in his official capacity as mayor. A judgment was entered in favor of plaintiff and against the defendants, jointly and severally, in the amount of $94,384.11, plus court costs of $165.15. and attorney fees of $11,951.25.

On September 17, 1991, the debtor and his wife filed for relief under Chapter 7 of the Bankruptcy Code.[1] The first meeting of creditors was held on October 9, 1991, and the debtors were discharged on December 16, 1991. The trustee filed his final report in a no asset case, the debtor was discharged, and the case was closed on January 14, 1992.

On or about January 24, 1995, Forrester caused the debtor's wages to be garnished at his place of employment, the City of North

---

1. The City of North Courtland, Alabama filed for relief under Chapter 9 of the Bankruptcy Code on December 9, 1992.

Courtland, in an attempt to collect the $94,-000.00 judgment. On March 2, 1995, the debtors filed a motion to reopen their chapter 7 proceeding to amend their schedules to add Forrester as a creditor, believing this would allegedly discharge the debt. The debtors stated that they did not list Forrester as a creditor in the original petition because they did not know that Fred James, as mayor, was individually sued for the debt/judgment. On April 28, 1995, the Court denied the debtors' motion to reopen, and a motion for reconsideration was filed on May 10, 1995.[2] It is in response to the motion for reconsideration that the Court issues this opinion.

## CONCLUSIONS OF LAW

■ Section 350(b) of the Bankruptcy Code states that a case may be reopened "to administer assets, to accord relief to the debtor, or for other cause." A decision to reopen a case for those purposes is within the discretion of the bankruptcy judge and will not be set aside absent a showing of abuse of discretion. *In re Humar*, 163 B.R. 296 (Bkrtcy.N.D.Ohio 1993).

In *In re Mendiola*, 99 B.R. 864 (Bkrtcy. N.D.Ill.1989), the debtor filed for relief under Chapter 7, and notice was sent to creditors advising them that it was a no asset case and that it was not necessary to file proofs of claim. The debtor was discharged, the trustee filed his final report stating it was a no asset case, and the case was closed. Thereafter, the debtor learned that two of her creditors were "inadvertently omitted from the schedules". She filed a motion to reopen her Chapter 7 no asset case to amend and add the omitted creditors, who held pre-petition claims against her. The court denied the debtor's motion to reopen her bankruptcy case.

In *In re Beezley*, 994 F.2d 1433 (9th Cir. 1993), a Chapter 7 debtor filed a motion to reopen his no asset Chapter 7 case to amend schedules to add omitted pre-petition creditors. The debtor argued that it was necessary to reopen and amend his schedules in order to discharge the omitted creditors. The bankruptcy court refused to reopen the case and held that "after a no asset, no bar date Chapter 7 proceeding has been closed, dischargeability is unaffected by scheduling; amendment of the schedules would be a pointless exercise". *Beezley* at 1434. The Bankruptcy Appellate Panel for the Ninth Circuit affirmed the bankruptcy court's decision. The issue was appealed to the Ninth Circuit Court of Appeals.

The Circuit Court of Appeals held that

Section 727(b) of the Bankruptcy Code defines the scope of a Chapter 7 debtor's discharge. Under that section, the discharge "discharges the debtor from all debts that arose before the date of the order for relief," except as provided in § 523. The operative word is "all". There is nothing in § 727 about whether or not the debt is or is not scheduled. As far as this section is concerned, a pre-bankruptcy debt is discharged, whether or not it is scheduled. But by the very own terms of § 727, the discharge is subject to the provisions of § 523. (citing *Mendiola* at 865). Section 727(b) itself makes no exception for unlisted debts. Thus, unless § 523 dictates otherwise, every pre-petition debt becomes discharged under § 727. *Beezley* at 1434.

Section 523 of the Code sets forth certain exceptions to discharge, and it is not necessary to give a lengthy discussion of each of these exceptions. The exception that is applicable to the present case is § 523(a)(3). This provision excepts from discharge certain debts that were neither listed nor scheduled by a debtor on his bankruptcy petition, but such provision requires a closer look to ascertain its precise meaning.

■ Section 523(a)(3) has two subsections. Subsection (A) deals with debts that are not the result of intentional torts (fraud, embezzlement, willful and malicious injury, etc.) In order for the debt to fall within this exception to the debtor's otherwise all-inclusive discharge, the debt must have been "nei-

---

**2.** The motion for reconsideration was not timely filed. See Rule 59(b) F.R.C.P. This error does not affect the ruling of this Court.

ther listed nor scheduled ... in time to permit ... timely filing of a proof of claim, unless [the creditor knew about the case] in time for such filing". *Mendiola* at 866. Therefore, this subsection only protects the creditor's right to file a proof of claim and participate in a distribution, nothing else. *In re Stark*, 717 F.2d 322 (7th Cir.1983). The unlisted creditor is not prejudiced by a debtor's failure to list it in a no asset case because it would not have received a distribution anyway. *Mendiola* at 867. [citing *In re Smolarick*, 56 B.R. 720, 723 (Bkrtcy.W.D.Va. 1986)]. In addition, in a Chapter 7 no asset case, there is never a claim filing period, and the time for filing a claim never expires. The notice to creditors in fact provides that it is not necessary to file a proof of claim. Therefore, section 523(a)(3)(A) is not applicable.

In other words, in a typical Chapter 7 case, the debtor's failure to list a creditor does not, in and of itself, make the creditor's claim nondischargeable. Scheduling, per se, is irrelevant ... Since dischargeability is unaffected by scheduling in a no asset, no bar date case, reopening the case to merely schedule the debt is for all practical purposes a useless gesture. *See Beezley* at 1434 (citing *In re Hunter*, 116 B.R. 3, 5 (Bkrtcy.D.D.C.1990).

In the present case, Fred and Bertha James had no assets for distribution to their creditors. If Forrester had been timely listed as a creditor on the schedules, he would have received nothing. Since the exception to the discharge set forth in § 523(a)(3)(A) does not apply, the debt the debtors seek to add has already been discharged, even though it was not listed or scheduled, *unless* the debt falls within one of the other exceptions i.e., child support, taxes, etc. If the debt does fall within one of these exceptions, "the debtor cannot change the nature of the debt merely by listing it on a piece of paper". *Mendiola* at 867.

■ If the debt owed by the debtor to Forrester is based upon one of the types listed at subsections (2), (4) or 6, of § 523(a) (fraud, willful and malicious injury), then sub-part (B) of § 523(a)(3) must be considered. A creditor who seeks to have its debt declared nondischargeable based upon an alleged intentional tort [subsection (2), (4) or (6)], must file a complaint within the fixed period of time. If an intentional tort creditor was neither listed nor scheduled in the bankruptcy, it could not have filed a timely complaint. The purpose of § 523(a)(3)(B) is to protect that creditor from being deprived of this right. In other words, sub-part (B) protects the right to file a proof of claim and the right to file a dischargeability complaint where the bar date had expired and the creditor had no notice of same.

■ Whether or not a debt is scheduled makes no difference to the outcome.

Reopening a case to list an omitted creditor does not extend the time to file complaints to determine dischargeability. Either the creditor had actual, timely notice of the [case] or he didn't. Amending the schedules will not change that. Scheduling the [omitted] debts will not affect whether or not those debts are discharged ... and will not change the nature of the debts ... This motion [to reopen and add omitted creditors] will not convert a nondischargeable debt into a dischargeable debt. *Mendiola* at 868.

Rule 4007(c) of the Bankruptcy Rules of Procedure, which states that a complaint which is based on subsections (2), (4) or (6) of § 523 must be filed within 60 days after the first meeting of creditors, is not applicable to the unlisted creditor without knowledge. This rule applies to complaints under § 523(c), not to complaints filed pursuant to § 523(a)(3)(B) (omitted creditor with intentional tort claim). In effect, a debtor who failed to list a creditor loses the jurisdictional and time-limit protections of § 523(c) and Rule 4007(c). *Mendiola* at 868. However, because the debtor failed to schedule the debt, Bankruptcy Rule 4007(b) affords the creditor the right to litigate dischargeability outside the normal time limits.

■ There are three ways to litigate dischargeability after a case is closed.

First, if a creditor pursues a lawsuit on the claim the debtor can assert the bankruptcy discharge as an affirmative defense and the court with jurisdiction over the lawsuit

can decide whether the debt falls within any of the exceptions to discharge. Second, under Bankruptcy Rule 4007(b) either the debtor or the creditor can move to reopen the case for the purpose of filing a complaint to determine dischargeability. Third, the debtor can bring an action in this Court to enforce the discharge injunction against the creditor attempting to collect discharged claims, which is contained in § 524(a) of the Bankruptcy Code. *Mendiola* at 870.

Fourthly, the debtor may be able to remove the collection effort to the bankruptcy court. 28 U.S.C. § 1334. The virtue of any of these procedures, as opposed to a motion to reopen to amend and add creditors, is that it will focus on the real dispute between the parties—the dischargeability of the debt. In the present case, these options are available to debtor or the creditor. It should be noted that there is no fee for reopening a bankruptcy proceeding under Rule 4007(b) for the purposes of determining the dischargeability of the unlisted debt(s).

After consideration of the evidence and conclusions of law, the Court finds that the reasoning set forth in *Beezley* and *Mendiola* to be a correct interpretation of the law. Therefore, the debtor's motion for reconsideration of the Order dated April 28, 1995, which denied the motion to reopen to add creditors, be and hereby is DENIED.

Done and Ordered.