In the Matter of James R. DEWBERRY, Debtor.

No. 99–21608.

United States Bankruptcy Court, S.D. Georgia, Brunswick Division.

Aug. 30, 2001.

William S. Orange, III, Brunswick, GA, for Plaintiff/Movant.

Lisa Wood, Brunswick, GA, for Defendant/Respondent.

### MEMORANDUM AND ORDER ON DEBTOR'S MOTION TO REOPEN

LAMAR W. DAVIS, Jr., Bankruptcy Judge.

Debtor James R. Dewberry ("Debtor") filed a Chapter 7 bankruptcy case on December 29, 1999, and received a discharge April 27, 2000. Shortly before the filing of his petition, on November 2, 1999, Debtor filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The complaint alleged that Debtor's termination from employment, ostensibly for cause, occurred, in fact, because of his age and seniority with the company and that the Respondent, Atlanta Gas Light Company ("AGL"), was intentionally replacing personnel occupying positions such as Debtor's with younger people in violation of federal law.

When Debtor filed his bankruptcy case on December 29, 1999, he did not list his discrimination claim against AGL as an asset in his schedules. The only reference to AGL was in Schedule B–Personal Property, Item 11, which calls for Debtor to

918

disclose interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. He listed "retirement with Atlanta Gas Light" and listed the current market value of his interest at $50,000.00. The schedules were executed under penalty of perjury on December 16, 1999, only six weeks after his EEOC complaint was filed. In Item 4(a) of the Statement of Financial Affairs filed in connection with his petition which called for the listing of "all suits and administrative proceedings to which the Debtor is or was a party within one year immediately preceding the filing of this bankruptcy case," he failed to list the EEOC administrative proceeding and marked the "none" response.

On November 30, 2000, Debtor filed a complaint against the Atlanta Gas Light Company in the United States District Court for the Southern District of Georgia. He asserted that he had received a right to sue letter from the EEOC, alleged age discrimination, and sought a judgment, including back pay, injunctive relief, liquidated damages, restoration of all employment benefits, including pension, insurance, attorney's fees, costs, and other unspecified relief. The complaint was amended on January 31, 2001. AGL filed a motion to dismiss that case on May 14, 2001, alleging that Debtor-the plaintiff in that case-lacked standing to assert the pre-petition claim which could be appropriately pursued, if at all, by the Chapter 7 Trustee, and alternatively that the doctrine of judicial estoppel should be interposed to prevent Debtor from pursuing the lawsuit which was not revealed to the Bankruptcy Court, the Trustee, or the creditors during the pendency of his case.

Apparently in response to this filing in the District Court, Debtor filed a Motion to Reopen on June 5, 2001, in order to amend the schedules and add the claim against AGL. AGL filed an objection to the Motion to Reopen on June 8, 2001, and the matter was set for oral argument. Debtor testified that he disclosed the nature of his claim against AGL to his bankruptcy counsel, William S. Orange, III, and assumed that it would be properly disclosed in the petition and schedules. However, at the time he executed the petition and schedules under oath, he either failed to read them or failed to question whether they were sufficient to place the Trustee or creditors on notice that a claim of potentially substantial magnitude against AGL existed. As a result of that omission, the case was administered as a "no-asset case" and closed on May 18, 2000, shortly after the expiration of the deadline for parties to object to the Debtor's discharge.

AGL takes the position that because of the sequence of events, Debtor could not reasonably be found to have omitted scheduling this claim in good faith, but rather must have been engaged in some fraud or intentional design to conceal it from his creditors. As a result, AGL argues that the Court should deny Debtor's Motion to Reopen.

Motions to reopen are governed by 11 U.S.C. § 350 which provides:

(a) After an estate is fully administered and the court has discharged the trustee, the court shall close the case.

(b) A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.

This Court has recently considered another Section 350 dispute and ruled that a debtor cannot show good faith when debtor's omission of a *creditor* from his or her schedules occurred because of fraud or intentional design, rather than through mere oversight, and that a motion to reopen can and should be denied. *See In re Marshall Bruce Garrett*, 266 B.R. 910

(Bankr.S.D.Ga.2001)(order denying motion to reopen). In the instant case, there is evidence which would support a finding that Debtor acted without the requisite good faith in the omission of this claim from his petition either because he failed to fully apprise his counsel of the nature and magnitude of his claim or because he failed to review for accuracy the petition and schedules filed on his behalf by counsel. Assuming, without deciding, that Mr. Dewberry acted in bad faith or without the requisite good faith, I nevertheless conclude that this case should be reopened. Since in *Garrett, supra,* I concluded the opposite, an explanation is necessary.

Ultimately the decision to reopen is vested in the discretion of the Court. *See Nintendo Co. v. Patten (In re Alpex Computer Corp.),* 71 F.3d 353, 356 (10th Cir.1995)("While the decision to reopen remains within the broad discretion of the bankruptcy court, it must be tethered to the parameters of § 350(b), or it is an abuse of discretion." (internal citation omitted)); *Citizens Bank & Trust Co. v. Case (In re Case),* 937 F.2d 1014, 1018 (5th Cir.1991)("The phrase 'or other cause' as used in Section 350(b) is a broad term which gives the bankruptcy court discretion to reopen a closed estate or proceeding when cause for such reopening has been shown. This discretion depends on the circumstances of the individual case and accords with the equitable nature of all bankruptcy court proceedings." (citations omitted)); *Rosinski v. Boyd (In re Rosinski),* 759 F.2d 539, 540–41 (6th Cir. 1985)("It is well settled that decisions as to whether to reopen bankruptcy cases and allow amendment of schedules are committed to the sound discretion of the bankruptcy judge and will not be set aside absent abuse of discretion." (citation omitted)). In exercising that discretion, I hold

that the purpose underlying the motion to reopen is critical to a determination of whether the debtor's good faith is relevant.

In *Garrett,* the Motion to Reopen was an effort to "accord relief to the debtor" to pursue a lien avoidance and a dischargeability determination. I found, under *Samuel v. Baitcher (In re Baitcher),* 781 F.2d 1529 (11th Cir.1986), and other decisions cited in *Garrett,* that the debtor lacked the requisite good faith to reopen in order to obtain relief for himself. *See Garrett,* No. 98–20984 at 2–9. An alternative basis for reopening a case under Section 350(b), however, is to "administer assets." Where the purpose for reopening is to administer an asset, "[a]ny advantage which Debtor may have gained by omitting the asset from [the debtor's] schedules is eliminated by ... allowing the Chapter 7 Trustee to administer the asset." *In re Daniel,* 205 B.R. 346, 349 (Bankr.N.D.Ga. 1997).

I hold that a debtor's good faith or lack of good faith is irrelevant to the question of whether to reopen a case when the purpose of the reopening is for the administration of undisclosed assets of the bankruptcy estate. This Court is unwilling to punish Debtor's creditors based merely on the fact of Debtor's nondisclosure. *See Travelers Indem. Co. of Ill. v. Griner (In re Griner),* 240 B.R. 432, 439 (Bankr.S.D.Ala.1999)(noting that "overly harsh and inequitable" position of defendant seeking to enjoin debtor from pursuing cause of action because debtor sought to add assets not disclosed on initial schedules "punishes the creditors of the nondisclosing debtor, not just the debtor" and stating that "[t]he better result is to allow the claim to be prosecuted and collected, order the funds paid toward claims filed in the case, and punish the debtor another way").[1] Here, neither the Trustee nor any

---

1. The issue addressed in *Griner* was whether

to enjoin a debtor from prosecuting a state

creditor has been shown to have done anything in collusion with Debtor or Debtor's counsel which would suggest that they should be penalized by the failure to have this asset properly scheduled, analyzed by the Trustee, and administered for the benefit of creditors.

I recognize that an underlying assumption on the part of Debtor and AGL is that granting the Motion to Reopen will emasculate AGL's assertion of judicial estoppel in the United States District Court action and that denying the motion will in effect work to grant AGL's motion on that ground in that Court. This assumption is widely held. *See Daniel*, 205 B.R. at 349 (noting that although reopening case "may be detrimental" to insurance company defending defendant in related lawsuit involving debtor "by depriving it of a judicial estoppel argument," creditors should not be deprived of opportunity to share in damages); *In re Maloy*, 195 B.R. 517, 519 (Bankr.M.D.Ga.1996)(stating that judicial estoppel argument "would not be available" if debtor is permitted to reopen case and amend schedules to include cause of action); *In re Koch*, 229 B.R. 78, 86 (Bankr.E.D.N.Y.1999)(stating that because bankruptcy court allowed debtor to amend schedules, state court defendant was "hindered" in utilizing judicial estoppel); *see also* Atlanta Gas Light Company's Objection to Debtor's Motion to Reopen the Case, ¶ 7.

 This assumption, however, is incorrect. Judicial estoppel is a doctrine employed to protect the integrity of the judiciary. *See Daniel*, 205 B.R. at 347 ("The primary purpose of the doctrine is not to protect the litigants, but to protect the integrity of the judiciary.")(quoting *Southmark Corp. v. Trotter, Smith & Jacobs*, 212 Ga.App. 454, 455, 442 S.E.2d 265 (1994) (interpreting federal judicial estoppel doctrine)); *Hardy v. Hardy*, Civ. No. 496–274, slip op. at 6 (S.D.Ga. Oct. 6, 1997)(noting that judicial estoppel doctrine is more concerned with protecting integrity of judicial process than protecting individual litigants). No litigant engages in self-serving contradiction when the *first* representation is made to a Court. Here, when Debtor originally filed his bankruptcy petition and failed to schedule the claim against AGL, no judicial estoppel argument arose. Only when the subsequent representation was made (in the United States District Court case) did the estoppel issue arise. It seems self-evident that if the principle is invoked to protect the integrity of the judiciary, then it must be invoked in the Court in which the apparent self-serving contradiction occurred and in which the defense is first asserted. As such, it is not for this Court to anticipate that Debtor's prior conduct in this forum was of such a character as to warrant the "death penalty" to his subsequent United States District Court case and bootstrap that belief into a conclusion that reopening should be denied. I hold that the Court where the age discrimination case is pending has exclusive jurisdiction to conclude whether Debtor's conduct here was so tainted as to warrant imposition of the rule in the case pending there.

 Moreover, I would view my decision to reopen of only marginal, if any, relevance to that Court's decision. Debtor cannot un-ring the bell. Debtor omitted

---

court claim which the debtor had failed to disclose on the initial schedules. The court held that the judicial estoppel doctrine was not applicable because the debtor had at that time amended his schedules to include the claim, thereby imposing no threat of imping-

ing on the court's integrity. *See id.* at 438 ("[Debtors] have not yet received a discharge and they amended their bankruptcy papers to include the state court suit. The initial omission of the suit did not impinge upon this Court's integrity.").

this claim from his schedules. He cannot change that fact. He now seeks, only after a Motion to Dismiss was filed pointing out the omission, to reopen and amend. He cannot change the fact that he did not realize his allegedly inadvertent omission and move to amend prior to being "prompted" to by AGL's motion. *See Sanders v. Sanders, (In re Sanders )*, Ch. 7 Case No. 98–41683, Adv. No. 98–4195 (S.D.Ga. Feb. 4, 2000)(considering omitted assets, added by later amendment, as still relevant in determining whether debtor's omissions were made with fraudulent intent and denying debtor's discharge on those grounds).

In *Booker T. Brown v. Savannah Rehabilitation & Nursing Center,* Civ. No. 497–75, slip op. (S.D. Ga. filed July 16, 1997), the court focused on three factors to determine if a plaintiff was judicially estopped from bringing a suit that he failed to list as an asset in his bankruptcy schedules. The court looked to whether the claim accrued prior to the filing of the bankruptcy petition, the debtor's justification for its omission, and whether or not the petition was amended. *Id.* at 2–3. Under this multi-layered analysis, the court viewed the debtor's omission in his bankruptcy case as an element-but not a dispositive element-in deciding the judicial estoppel issue. *See id.; see also* A.S. Deeks, Raising the Cost of Lying: Rethinking Erie for Judicial Estoppel, 64 U. Chi. L.R. 873, 876 (1997)("[C]ourts appear consciously to leave the doctrine's boundaries vague, since it may be advisable not to prescribe too many rules for the application of a doctrine designed to protect the integrity of the courts.") (quoting *In re Cassidy*, 892 F.2d 637, 642 (7th Cir.)), *quoted with approval in Hardy,* Civ. No. 496–274 at 7.

In this case, the Court in which the discrimination case is pending is fully equipped to view the Debtor's actions, weigh his testimony as to good faith, and reach a conclusion as to whether judicial estoppel should apply. That analysis might in fact be impacted if this Court finds that Debtor's good faith must be shown in order to grant the Motion to Reopen, as in *Garrett, supra,* and adjudicated his good faith or lack thereof in this order. I find, however, that when reopening of the case is sought for the purpose of administering a previously undisclosed asset, the question of debtor's good faith is irrelevant. Good faith is relevant, if at all, as it applies to the acts of the Chapter 7 Trustee.

■ If, as here, there is no suggestion that the Trustee acted in bad faith, then the test for reopening to administer assets is simply whether the administrative expense and inconvenience outweighs the potential benefit to the estate. Here, it does not. At this point, creditors holding scheduled claims in excess of $270,689.00 have received nothing. A case is pending which, if successful, will recover property of the estate. While what Debtor originally revealed was an exempt asset, his retirement, AGL has not demonstrated that a recovery in this case will be exempt from creditors. As such any recovery will be paid first to creditors, with any surplus paid to the Debtor. *See* 11 U.S.C. § 726(a)(1)-(6). Counsel has been employed in the case pending in the District Court. After the reappointment of a Trustee, the Trustee may determine whether to intervene and prosecute that case, including defense of the judicial estoppel motion, with existing counsel or to employ separate counsel, or to abandon the claim.

■ Here, to administer what is potentially a valuable asset and attempt to pay creditors, I find that the Motion to Reopen should be granted. As articulated above, I make no finding as to *Debtor's* good faith

conduct in this Court, as it bears on AGL's Motion to Dismiss, which is properly adjudicated in the United States District Court. This case is reopened and the United States Trustee is directed to appoint a Trustee to administer assets in the case.