In re Donna H. BARGER, Debtor.

No. R01–41926.

United States Bankruptcy Court,
N.D. Georgia,
Rome Division.

June 19, 2002.

E. Garland Lea, Cartersville, GA, Alysa B. Freeman, Parks, Chesin, Walbert & Miller, PC, Atlanta, GA, for debtor.

Benton J. Mathis, William H. Buechner, Jr., Freeman, Mathis & Gary, LLP, Atlanta, GA, David G. Archer, E. Keith Lovell, David G. Archer, P.C., Cartersville, GA, for City of Cartersville.

## ORDER

PAUL W. BONAPFEL, Bankruptcy Judge.

Donna H. Barger (the "Debtor") has moved to reopen her Chapter 7 case to amend her Statement of Financial Affairs to set forth a claim in a lawsuit that she had filed in the United States District Court against the City of Cartersville two months before she filed her bankruptcy petition. Although she brought the existence of this claim to the attention of the Chapter 7 Trustee at the § 341(a) meeting of creditors, she did not thereafter amend her bankruptcy filings. The motion seeks to reopen the case so that this claim can be administered in it.[1]

In the District Court litigation, the City contends that Debtor's failure to list the claim against the City in her bankruptcy papers precludes its assertion under the doctrine of judicial estoppel. The City objects to reopening of her case on the same ground. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and the Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(1) and 28 U.S.C. § 1334.

The Court held a hearing on June 5, 2002, at which Debtor and the City submitted the matter for determination based on the materials filed in this case by the Debtor and the City and the argument of

counsel at the hearing. Based on the record before the Court, the Court made oral findings of fact and conclusions of law at the hearing pursuant to FED. R. CIV. P. 52(a), applicable to this contested matter pursuant to FED. R. BANKR. P. 7052, which are supplemented in this Order.

Section 350 of the Bankruptcy Code, 11 U.S.C. § 350(b), permits the reopening of a closed bankruptcy case "to administer assets, to accord relief to the debtor, or for other cause." The claim against the City is an asset that was property of Debtor's estate under 11 U.S.C. § 541(a). The Court's docket does not indicate that the claim was abandoned or otherwise administered. Because the claim against the City was not scheduled, it was not abandoned under § 554(c) of the Bankruptcy Code. 11 U.S.C. § 554(c). Therefore, the claim remains property of the estate, § 554(d). Under these provisions, the Court should reopen the case so that a Chapter 7 Trustee may take charge of the claim as property of the estate and so that Debtor's creditors may benefit from any recovery there may be on the claim. *In re Tarrer*, 273 B.R. 724, 732 (Bankr.N.D.Ga. 2001) (Drake, J.).

Whether the doctrine of judicial estoppel is applicable to preclude assertion of the claim appears to be a question for the tribunal in which the claim is being asserted. *See In re Lewis*, 273 B.R. 739, 747 (Bankr.N.D.Ga.2001) (Drake, J.); *In re Tarrer*, 273 B.R. 724, 733 (Bankr.N.D.Ga. 2001) (Drake, J.). Nevertheless, because the City has presented the question in opposition to the motion to reopen, it is

---

1. The motion states that Debtor also seeks to reopen the case to file an Application to Employ Special Counsel for the purpose of litigating the claim against the City of Cartersville. Of course, if the case is reopened, the Trustee, rather than Debtor, will be responsible for prosecuting the claim and for employ-

ing special counsel, if appropriate, pursuant to 11 U.S.C. § 327(e). It is clear from the record that Debtor desires the case to be reopened so that the claim can be administered in accordance with the Bankruptcy Code.

appropriate to address it. As explained below, Debtor did not conceal the claim or attempt to obtain an unfair advantage for herself. To the contrary, the record shows that the failure to amend her bankruptcy papers *after disclosure to the Chapter 7 Trustee* is the result of counsel's inadvertence that had no substantive effect on the prior proceedings in this case. The judicial estoppel issues raised by the City thus provide no basis for denying the motion to reopen.

Based on the Court's findings of fact and conclusions of law, therefore, the Court will grant Debtor's Motion.

### I.

On July 18, 2001, Debtor filed a lawsuit against the City of Cartersville and others in the United States District Court for the Northern District of Georgia, Rome Division, that being *Donna Barger v. City of Cartersville et al.*, Case Number 4:01–CV–201–HLM (the "Litigation"). In the lawsuit, Debtor alleges that she was demoted by her employer, the City of Cartersville, in violation of the Americans with Disabilities Act, the Family and Medical Leave Act, and the Age Discrimination in Employment Act.

Debtor filed a petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 *et seq.*, on September 4, 2001. Debtor did not list the Litigation as required by Question 4 of the Statement of Financial Affairs, nor did she disclose it as a contingent or unliquidated claim as required by Question 20 of Schedule B of her Schedules of Assets and Liabilities.[2] These documents are submitted under penalty of perjury. Debtor did not initially inform her bankruptcy attorney of the Litigation, but her litigation counsel did. (Barger Affidavit, ¶ 7, Freeman Affidavit ¶ 6).[3]

On November 8, 2001, Debtor attended the meeting of creditors held pursuant to § 341(a) of the Bankruptcy Code. 11 U.S.C. § 341(a). The bankruptcy judge is not permitted to attend this meeting. 11 U.S.C. § 341(c). This meeting includes an examination of the debtor under oath. FED. R. BANKR. P.2003(b)(1). Immediately prior to this meeting, Debtor discussed the Litigation with her bankruptcy counsel. At the meeting, Debtor told the Chapter 7 Trustee about the Litigation. Specifically, she recounts the meeting and her testimony as follows:

> In November 2001, I attended my § 341 meeting of creditors with Mr. Lea [Debtor's bankruptcy counsel] before Trustee Jeff MacLeod. Before my name was called to appear, I explained the lawsuit to Mr. Lea and told him how much I was hoping to be reinstated with the City of Cartersville. Mr. Lea did not ask for additional information about this lawsuit. During the § 341 meeting of creditors, I was sworn in, and my testimony was recorded in the presence of the trustee and Mr. Lea. Trustee MacLeod specifically asked about the lawsuit that I filed against my former employer for discrimination. When I explained the circumstances of the filing, he asked me if I was "going to get a big settlement from this lawsuit in the next

**2.** A debtor is required to file Schedules of Assets and Liabilities and a Statement of Financial Affairs in compliance with Official Forms 6 and 7, respectively, prescribed by the Federal Rules of Bankruptcy Procedure. FED. R. BANKR. P. 1007(b). The Official Forms are appended to the Federal Rules of Bankruptcy Procedure. These required documents are sometimes referred to, collectively, as "schedules."

**3.** The Affidavit of Debtor is attached as Exhibit 9 to the City's Opposition filed in the Bankruptcy Court on April 30, 2002 and the affidavit of her litigation counsel, Alysa Freeman, is attached as Exhibit 10 to that Opposition.

week?" I said no. There were no further questions asked during this hearing about my lawsuit against the City of Cartersville.[4]

This evidence demonstrates a voluntary and truthful disclosure of the Litigation at the § 341(a) meeting.

The Trustee states that he asked Debtor for the monetary amount of the lawsuit, and she informed him that she sought reinstatement of her previous position with the City.[5] A transcript of the § 341(a) meeting is not available[6] and the Trustee was not present at the hearing to provide additional information about the § 341 meeting or any other facts relating to this matter. The Trustee was aware that the Litigation was not listed in the Schedules.[7] The Trustee does not oppose reopening of the case.[8]

Because Debtor did not list the claim against the City on her schedules, she also did not seek to keep all or any part of it by claiming it as exempt as required by FED. R. BANKR. P. 4003(a). As the record currently stands, therefore, Debtor would not have an interest in any monetary recovery based on prepetition claims unless all creditors are paid, with interest. 11 U.S.C. § 726(a)(6).

Debtor's bankruptcy counsel, Garland Lea, was aware of the Litigation, having been advised of it by Debtor's litigation counsel. Bankruptcy counsel admits that the failure to list the Litigation in Debtor's schedules was the result of counsel's oversight.

On November 9, 2001, the day after the § 341(a) meeting, the Trustee filed his Report of No Distribution, indicating that there were no assets that could be recovered for the benefit of creditors. No objections to Debtor's discharge were filed by the Trustee or any other party in interest within the time permitted by FED. R. BANKR. P. 4004(a) and the court automatically granted a discharge to Debtor on January 12, 2002 as required by 11 U.S.C. § 727.

In the course of discovery in the Litigation, the City discovered that Debtor had filed bankruptcy but had not listed the Litigation in her schedules. The City filed a motion for summary judgment in the district court on the grounds of judicial estoppel due to Debtor's representations in her bankruptcy case. Thereafter, on April 4, 2002, Debtor filed her motion to reopen and also responded to the City's motion for summary judgment.

## II.

■■■■ The reopening of a case is governed by Section 350(b) of the Bankruptcy Code, 11 U.S.C. § 350(b):

> A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.

This Court has broad discretion in determining whether to reopen a case under § 350(b). *See Faden v. Insurance Co. Of N. Am. (In re Faden),* 96 F.3d 792, 796 (5th Cir.1996); *In re Bianucci,* 4 F.3d 526, 528 (7th Cir.1993); *In re McDaniel,* 217

---

4. Barger Affidavit ¶ 7.

5. MacLeod Affidavit ¶ 4, attached as Exhibit 11 to the City's Opposition.

6. The United States Trustee is responsible for maintaining records of § 341(a) meetings. FED. R. BANKR. P. 2003(c). At the hearing, the parties advised the Court that circumstances

beyond the control of any of the parties have precluded the availability of a transcript of Debtor's § 341(a) meeting of creditors.

7. MacLeod Affidavit ¶ 5.

8. MacLeod Affidavit ¶ 7.

B.R. 348, 352 (Bankr.N.D.Ga.1998) (Drake, J.). "The bankruptcy court should exercise its discretion, based upon the peculiar facts present and determine if cause exists and how ultimately to dispose of the case." *In re Lewis*, 273 B.R. 739, 743 (Bankr. N.D.Ga.2001) (Drake, J.) (*quoting In re Koch*, 229 B.R. 78, 88 (Bankr.E.D.N.Y. 1999)).

▪ Although Debtor disclosed the existence of the Litigation to the Trustee, she did not list it in her schedules. Regardless of whether the claim was scheduled, it was property of her estate under 11 U.S.C. § 541(a). The claim was not abandoned by the Trustee or at the request of any other party in interest under 11 U.S.C. § 554(a) or (b). The Trustee did nothing with the claim and, therefore, it was not administered.[9] Because Debtor did not schedule the claim and it was not otherwise administered, inaction did not result in its abandonment. § 554(c). This unscheduled and unadministered claim, therefore, remains property of the estate under § 554(d). A pre-petition asset which was not properly disclosed in a debtor's schedules and remains property of an estate can be administered if the case is reopened. 11 U.S.C. § 554(d); *see In re Arboleda*, 224 B.R. 640 (Bankr.N.D.Ill. 1998); *In re Peebles*, 224 B.R. 519 (Bankr. D.Mass.1998); *In re Winburn*, 167 B.R. 673 (Bankr.N.D.Fla.1993).

▪ From the foregoing analysis, it would ordinarily follow that the case should be reopened to administer the claim for the benefit of creditors of Debtor. *See In re Tarrer*, 273 B.R. 724, 732 (Bankr. N.D.Ga.2001). Whether that administration would also benefit Debtor remains to be seen. As noted above, Debtor has not scheduled this claim, or any recovery obtained thereon, as property that she can keep as exempt property. Unless she is entitled to exempt the claim, creditors will receive the benefit of any recovery, after payment of fees and expenses of administering the case and pursuing the Litigation, under the distributive provisions of 11 U.S.C. § 726.

The City contends, however, that Debtor's conduct, which the City argues will preclude pursuit of the claim in the Litigation on the ground of judicial estoppel, also requires denial of her motion to reopen the case. Application of the judicial estoppel doctrine to preclude litigation of the claim on the merits appears to be an issue for the District Court in which the claim is pending. *See In re Lewis*, 273 B.R. 739, 747 (Bankr.N.D.Ga.2001); *In re Tarrer*, 273 B.R. 724, 733 (Bankr.N.D.Ga.2001). Nevertheless, because the City has raised the issue and because Debtor's conduct in question goes, at least in part, to the administration of her bankruptcy case in this court, it is appropriate to address the City's argument.

The Eleventh Circuit recently addressed judicial estoppel in the bankruptcy context in *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. May 20, 2002). In that case, the plaintiff debtor had filed an employment discrimination action in federal district court during the pendency of his Chapter 13 case but did not amend his Chapter 13 schedules to disclose the litigation. When he later converted the case to Chapter 7, he again did not disclose the claim on his schedules. No assets were administered in the case and he received a discharge. Thereafter, the district court

---

**9.** The Trustee's filing of a Report of No Distribution is effectively an administrative notice to the bankruptcy court and clerk that the Trustee does not intend to administer anything in the case. It is not equivalent to, or a substitution for, an abandonment of an asset, whether or not scheduled.

applied the doctrine of judicial estoppel to bar the plaintiff debtor's claims.

The Eleventh Circuit affirmed with regard to the monetary claims,[10] applying a two part test for the applicability of judicial estoppel announced in *Salomon Smith Barney, Inc., v. Harvey, M.D.*, 260 F.3d 1302, 1308 (11th Cir.2001). For the doctrine to be applicable, the *Burnes* court ruled, it must be shown (1) that allegedly inconsistent positions were made under oath in a prior proceeding and (2) that such inconsistencies were calculated to "make a mockery of the judicial system." *Burnes, supra*, at 1285. Concluding that the failure to disclose a claim in a bankruptcy case was inconsistent with its assertion in another forum, the court turned to the issue of the plaintiff debtor's intent. *Id.* at 1286.

On the issue of intent, the court observed that the doctrine of judicial estoppel applies in situations involving intentional contradictions, not simple error or inadvertence. *Id.* at 1286–87.[11] With regard to the issue of judicial estoppel and the omission of assets in a bankruptcy case, the court found that deliberate or intentional manipulation can be inferred from the record and that a debtor's failure to satisfy the statutory duty of disclosure is "inadvertent" only when "in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *Id.* at 1287.[12]

Applying these standards, the Eleventh Circuit court found that the plaintiff debtor had knowledge of the employment discrimination claims and had a motive for their concealment that required application of the judicial estoppel doctrine. With regard to motive, the court found, *id.* at 1288:

> As to motive, it is undisputed that [the debtor] stood to gain an advantage by concealing the claims from the bankruptcy court. It is unlikely he would have received the benefit of a conversion to Chapter 7 followed by a no asset, complete discharge had his creditors, the trustee, or the bankruptcy court known of a lawsuit claiming millions of dollars in damages.

The court also rejected the debtor's argument that he should be allowed to reopen his bankruptcy case to amend his schedules to include the omitted claim. The court reasoned, *id.* at 1288:

> Allowing [the debtor] to back-up, reopen the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtors' assets.

The facts here are different from those presented in *Burnes*. As an initial matter, Debtor in the instant case voluntarily disclosed the claim to the Chapter 7 Trustee who is responsible for pursuing it on behalf of creditors and the estate. There

---

**10.** The court found judicial estoppel inapplicable to the claims for injunctive relief because those requests for relief did not provide the prospect for monetary relief that would have benefited the bankruptcy estate. *Id.* at 1288–89.

**11.** The court cited *In re Coastal Plains, Inc.*, 179 F.3d 197, 206 (5th Cir.1999); *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*,

81 F.3d 355, 362–63 (3d Cir.1996); *In re Cassidy*, 892 F.2d 637, 642 (7th Cir.1990); and *American Nat. Bank of Jacksonville v. FDIC*, 710 F.2d 1528, 1536 (11th Cir.1983).

**12.** The court quoted the Fifth Circuit's decision in *In re Coastal Plains*, 179 F.3d 197, 210 (5th Cir.1999).

was no concealment. Debtor was not "caught" after being challenged. In addition, unlike the facts as found in *Burnes*, the amendment of Debtor's schedules after the disclosure would have made no difference in the conduct of this case or the grant of her discharge; her failure to amend did not affect those outcomes, either.[13]

The Debtor's failure to *schedule* the claim is not equivalent to a *concealment* of it, which is the critical concern in the *Burnes* case. Proper bankruptcy practice quite clearly requires proper listing of the claim in the Statement of Financial Affairs and in the Schedule of Assets,[14] but the Federal Rules of Bankruptcy Procedure permit amendments before the case is closed. FED. R. BANKR. P. 1009(a). Debtor should have amended her schedules; having disclosed the claim at her meeting of creditors, she had no reason not to. Moreover, amending the schedules would be to her advantage because, if the Trustee did nothing with the claim as scheduled, it would be abandoned to her under 11 U.S.C. § 554(c).

In any event, although Debtor did not amend her schedules to list the Litigation as a matter of technical bankruptcy pleading, her voluntary disclosure of it to the Chapter 7 Trustee at the § 341 meeting had the same substantive effect of an amendment from the standpoint of the Chapter 7 Trustee's knowledge and duties. The claim was (and is) property of the estate under 11 U.S.C. § 541, and the Trustee had authority to pursue it under FED. R. BANKR. P. 6009. Ultimately, it is the Trustee's duty to investigate the lawsuit as property of the estate—its merits,

its posture, and its value to the estate. Debtor's amendment of her schedules would not have changed the Trustee's knowledge of the claim or his duties.

■ The record demonstrates that Debtor thought she was complying with all applicable disclosure requirements when she advised her bankruptcy counsel of the litigation prior to the § 341(a) meeting and when she testified, under oath, about the existence of the Litigation and her understanding of it before the bankruptcy trustee at the § 341 meeting of creditors. The City contends that Debtor was misleading because she did not fully describe the details of her monetary demand and because she expressed her interest in the lawsuit as being limited to reinstatement. The record, however, indicates that the Trustee did not ask for any details about the Litigation. Even if Debtor's responses were somewhat limited, that does not convict her of concealment. It is the responsibility of a Chapter 7 trustee to investigate a potential claim once it is disclosed and to pursue it if there is benefit to the estate in doing so. A bankruptcy trustee should not rely on an individual debtor's ability to determine what relief a debtor is entitled to in litigation any more than competent litigation counsel should accept a client's understanding of the law and facts in framing the client's demand for relief in the litigation. Even a cursory review of the pleadings or discussion with Debtor's litigation counsel would have made him more aware of the merits and value of the litigation than a brief inquiry of Debtor at the § 341(a) meeting.

Moreover, to this debtor, the *value to her* of the Litigation may in fact be the

---

**13.** These circumstances also distinguish this case from *Scoggins v. Arrow Trucking Co.,* 92 F.Supp.2d 1372 (S.D.Ga.2000) and *Traylor v. Gene Evans Ford, LLC,* 185 F.Supp.2d 1338 (N.D.Ga.2002).

**14.** See Note 2 *supra.*

possibility of reinstatement. What a lawsuit is worth from the perspective of a debtor and from the perspective of a trustee are quite likely two completely different things. Having been notified on the record under oath by the Debtor of the existence of her District Court action, it was incumbent on the Trustee to do more than rely on a layperson or her bankruptcy attorney who does not perform employment discrimination work to determine the value of the lawsuit.

It is not reasonable to expect an individual debtor to understand the extent of her rights to relief or whether such relief can be obtained for her benefit or the estate's. The Court is mindful that the requirements of the legal system, including the bankruptcy court, are overwhelming and intimidating to a layperson. As the court observed in *In re Lewis*, 273 B.R. 739, 747 (Bankr.N.D.Ga.2001) (Drake, J.), "[f]or better or worse, many debtors are quite naive about the law, especially the stringent requirements of the bankruptcy system."

Debtor had litigation counsel and bankruptcy counsel who were advising her as to her rights and duties. Had her counsel prepared an amendment to her schedules for her, she would presumably have signed it and it would have been filed, as the Federal Rules of Bankruptcy Procedure authorize. Fed. R. Bankr. P. 1009(a). Because counsel did not prepare an amendment, admittedly because of oversight, she justifiably could have concluded that she had no further obligations. It would be patently unfair to attribute counsel's error to Debtor in these circumstances. Her

counsel's failure to amend the schedules does not render Debtor's conduct offensive and, in the circumstances of this case, was nothing more than inadvertence on counsel's part. Clearly, neither Debtor nor Debtor's counsel acted with an intentional or manipulative disregard of the legal system.

The fact that, to date, Debtor's claim has not been administered in this case is the responsibility of the Chapter 7 Trustee, who knew of the pendency of the claim early on, not of the Debtor. Given the initial lack of interest by the Chapter 7 Trustee in pursuing the claim after its disclosure to him, it is impossible to conclude that Debtor's amendment of her bankruptcy papers would have made any difference to date in the administration of this case.

In this regard, the court takes into consideration the important fact that it is the bankruptcy trustee who is the "point person" in a bankruptcy case from the standpoint of administering the case. The court has no discretion to investigate whether a discharge should or should not be granted in the absence of a timely objection to the discharge filed by the Trustee or another party in interest. *See* 11 U.S.C. § 727(a); Fed. R. Bankr. P. 4004(c). Thus, a bankruptcy court routinely grants discharges and has no duty or reason to look at the debtor's schedules unless they are relevant in litigation brought before it. Had this claim been shown on Debtor's schedules, either as originally filed or through an amendment, she still would have received a discharge in the usual course unless the Trustee or another party objected.[15]. In

---

15. Debtor's failure to amend her schedules to show the Litigation after she openly disclosed the Litigation at the § 341(a) meeting, in fact, was definitively not in her best interest. At that point, the Trustee knew of the claim and could proceed to administer it, whether or not

scheduled. At the same time, Debtor was exposed to an allegation that her discharge should be denied because she had made a false oath in not listing it. *See* 11 U.S.C. § 727(a)(4). Moreover, had she scheduled it and the Trustee declined to pursue the matter,

any event, this Court is not offended by Debtor's conduct in this case and cannot conclude that it has been misled in any way.

Based on all of the foregoing, the Court concludes that Debtor did not operate with an intentional or manipulative disregard of the legal system or the bankruptcy processes in this Court. She truthfully and voluntarily disclosed the existence of the Litigation to the Trustee, the person responsible for pursuing it, whether or not it had been scheduled. Her counsel's failure to amend her schedules could not, and did not, gain any advantage for her and, indeed, that failure was actually adverse to her interests. Her counsel has admitted that this failure was inadvertent oversight and there is nothing in the record or this Court's experience that would indicate otherwise.

The Federal Rules of Bankruptcy Procedure are to be construed "to secure the just, speedy, and inexpensive determination of every case and proceeding." Fed. R. Bankr. P. 1001. It would not serve the objectives of those Rules to hold that, in these circumstances, Debtor's failure to amend schedules to list a claim that had been voluntarily disclosed to the Chapter 7 Trustee at the § 341(a) meeting of creditors should preclude reopening of the case to correct that failure. To the contrary, because the voluntary disclosure to the trustee served the same substantive purpose as an amendment, because Debtor did not and could not benefit by the failure to amend, and because the failure is due to inadvertence, the just determination of this case requires reopening so that the claim can be administered.

■ It is also appropriate to note that application of judicial estoppel to prevent administration of the claim in this case could inflict the remedy of judicial estoppel on parties who had nothing to do with the conduct the remedy is designed to deter, and who should be the beneficiaries of proper disclosure, namely, Debtor's creditors. If there are adverse consequences that a debtor should suffer due to omission of a scheduled ·claim, there are punishments other than judicial estoppel that can be directed at a debtor, rather than the estate and creditors, such as sanctions under Fed. R. Bankr.P. 9011, revocation of the discharge, or denial of any exemption in the claim and its proceeds. *See In re Lewis,* 273 B.R. 739, 748 (Bankr.N.D.Ga. 2001). In considering application of a discretionary doctrine such as judicial estoppel, the important interests of creditors militate against its application.

This court cannot, and this Order does not, determine the applicability of the City's judicial estoppel defense in the pending litigation. The analysis above, however, shows that the doctrine does not preclude reopening of this case.

In determining whether to permit a debtor to reopen her case to disclose a pre-petition asset, courts have looked at several factors: the benefit to the debtor; the prejudice to the defendant; and the benefit to the creditors. *E.g., In re Lewis,* 273 B.R. 739, 744 (Bankr.N.D.Ga.2001) (Drake, J.); *In re Tarrer,* 273 B.R. 724 (Bankr.N.D.Ga.2001) (Drake, J.). As the court noted in *Lewis,* the first two factors are intertwined because "[i]f reopening the case benefits the debtor, it necessarily prejudices the defendant [and] if not reopening the case benefits the defendant, it necessarily prejudices the debtor." *Lewis,* 273 B.R. at 744. The benefits and detriments arise not so much in the bankruptcy case, however, but in the forum where the claim is pending and the judicial estoppel

the claim would have been abandoned. 11   U.S.C. § 554(c).

argument is applicable. If Debtor is permitted to reopen her case, she is no longer advocating inconsistent legal positions and, therefore, judicial estoppel may not be applicable to the Litigation. Indeed, if the case is reopened, her bankruptcy trustee will be entitled to pursue her claims to the extent they are property of the estate. FED. R. BANKR. P. 6009. On the other hand, if Debtor is barred from reopening her case, the City may well prevail on a judicial estoppel argument and in any event there will be no possibility for her trustee to recover anything for creditors.

The most persuasive factor for this court to weigh is the potential effect a reopening would have on the creditors of Debtor's estate. *See Lewis,* 273 B.R. at 747 ("the persuasive factor for the Court to weigh in deciding whether to reopen this case is not its effect upon the Debtor or upon the [defendants] in a state court forum, but rather the effect a reopening would have on the creditors of the Debtor's estate"); *Tarrer,* 273 B.R. at 735. It is incongruous to punish Debtor's creditors and impair their prospects for a potential recovery in the bankruptcy case in order to improve the City's judicial estoppel argument in District Court. In *In re Daniel,* 205 B.R. 346 (Bankr.N.D.Ga.1997) (Murphy, J.), the court observed that reopening a bankruptcy case in order for a debtor to disclose an asset is appropriate even if it deprives a defendant of a judicial estoppel defense. The *Daniel* court noted, *id.* at 349:

> Debtor now seeks to cure her earlier omission and, most significantly, intends to share the fruits of any recovery with her prepetition creditors. Any advantage which Debtor may have gained by omitting the asset from her schedules is eliminated by reopening, amending the schedules and allowing the Chapter 7 Trustee to administer the asset.

In accordance with *Lewis, Tarrer,* and *Daniel,* this Court concludes that the interests of Debtor's creditors override any detriment that the City may sustain as a result of reopening the case and that the Debtor's conduct does not preclude such reopening.

### III.

It is proper under the circumstances to allow Debtor to reopen her Chapter 7 case to permit Debtor to disclose the lawsuit against the City of Cartersville by amending her schedules and statement of financial affairs, to permit administration of the claim asserted in the Litigation as property of her bankruptcy estate, and to otherwise conduct administration of this case as appropriate. Based on the foregoing,

**IT IS ORDERED** that the Debtor's motion to reopen her bankruptcy case is **GRANTED** and Debtor's case is **RE-OPENED**.

The Clerk is hereby **directed** to serve a copy of this Order on the Debtor, counsel for the Debtor, counsel for the City of Cartersville, the former Chapter 7 Trustee, and the United States Trustee.

**IT IS SO ORDERED.**